and are fully stated in the opinion of the court, which was delivered by
TilghmAN, C. J.
The first exception is, “that the court below mistook the nature of the plaintiffs’ action, which is founded on the written agreement, signed by the défendants.” This error is assigned in such general terms, that the defendants were not bound to answer it. I think it unnecessary to make any particular remarks on it, as the .errors of which the plaintiffs complain, are specified in the other exceptions.
*289 2. That the court erred, in charging the jury, “that the plain-right, in the present action, was to be decided by the law of Louisiana, and not by the law of Pennsylvania.”
The court said, that the money claimed by the plaintiffs, in this suit, being in Louisiana, was attached, there, and consequently the judgment of the courts there, touching the disposition of that money, was conclusive. This opinion appears to me to have been very correct. The thing attached being in Louisiana,- was subject to the jurisdiction of her courts. By what law it was to be governed, it was for the judges of those courts to decide; and I presume they would decide by their own laws. It seems, that by their law, the assignment of Moore, Myers, and Co. had no effi* caey against a creditor laying an attachment, except it had been made known to the garnishee, in whose hands the attachment was laid, previous to the trying of it. That being the case, the judges were bound to decide accordingly, and judgment having been given, the right to receive the money was vested in the attaching creditor. The garnishee, then, was compelled to pay the money over to Richard Badnell, the plaintiff in the attachment; and the courts of every state in the union, are bound to pay respeet to the judgment under which it was paid. So far, therefore, as concerned the payment of that money, the plaintiffs in the present case were concluded by the courts of Louisiana, founded on thciy own laws.
3. That there was error in charging, “that, by the intervention of Moore, Myers, and Co., the proceedings in New Orleans lost the character of a foreign attachment, and became a personal action, and this charge, operated in favour of the defendant in the present action.” Whether every word of the charge was strictly accurate is immaterial. It is sufficient, if it was right, so far as it was necessary to instruct the jury, in order to enable them to give a proper verdict. Now, when not only Moore, Myers, and Co., but their assignees, for whose use this suit was brought, had voluntarily intervened, in the attachment pending in New Orleans; when, in consequence of their petition, they had been permitted to become parties to that suit, and put in their claim to the property attached, they certainly put themselves on tbe judgment of that court, as to their right to that property. It was no longer an ex parte proceeding, but one in which both parties appeared, and were heard on the merits of their case. So far, then, the nature of the proceedings was changed, and it is difficult to perceive on what principle the plaintiffs, who had placed themselves in the situation of parties, can evade the judgment of the court. I am of opinion, upon this exception, that the charge of the District Court was correct.
4. In charging, “that it was the duty of the plaintiffs, in the present suit, to have laid before the court at New Orleans, the *290 transactions between Spackmun and Little, and Moore, Myers, and Co.” — To do justice to this part of the charge, we must take all that was said by the presiding judge. Besides saying, that if Moore, Myers, and Co. complained of the fraudulent conduct of Spackmun and Little, they ought to have come forward with their charge, as they were acquainted with all the circumstances of the transaction, he went on to say, that nothing fraudulent was proved by the evidence in this cause. And, in so saying, he was well justified. For what was the conduct of Spademan and Little? They were agents for Badnell; they knew that Moore, Myers, and Co. were justly indebted to him; and that there was danger of the debt being lost, unless secured by an attachment on the property in the hands of their own agent, Mderson. Now, what was there against morality, or good faith, in their endeavouring to secure this debt for Badnell? It is true, they had no formal power of attorney, and therefore acted on their own responsibility, inlaying an attachment in the name of Badnell. If he had disavowed the proceeding, they would have been subject to an action for damages. But he ratified the act, which made all right. Then if there was no fraud proved in Spackmun and Little, any thing which was said by the judge of the District court, as to the dutj? of the plaintiffs, to have alleged that fraud in the court of New Orleans, was quite immaterial. It cannot be denied, however, that it would have been proper to have made the allegation of fraud, if fraud there had bqen, in the court where the cause was depending.
5. In charging, “ that the court at New Orleans decided, that Spademan and Little were not entitled to the money in the hands 'di Mderson.” — This exception cannot be supported. When the Court at New Orleans decided, that the money, or debt, in the hands of Mderson, was the property of Moore, Myers, and Co., and as such liable to the attachment of Badnell, they certainly did decide, by plain inference, that Spa.ckman and Little were not entitled to it. Suppose Spackmun and Little had brought suit for this money against Mderson, after the judgment in the attachment, would not that judgment have been a good plea in bar of their action ? Undoubtedly it would. I am taking for granted, that Mderson did not suffer judgment in the attachment to go against him .by fraudulent collusion with Badnell, because nothing of that kind appeared. Such a fraud would have made a different case.
6. The sixth and last error assigned, is, that the court charged, it was competent to the defendant to persevere in an action after notice, which was begun, but not completed, before notice; and which, by the fact of which notice was given, was illegal at the time the act was begun.” This exception is not very clearly expressed. What was meant, I presume, is this. It would have been illegal for the defendant to have laid an attachment on the proper *291 ty of Moore, Myers, and Co. in New Orleans, if before it was laid, he had received notice of the general assignment of Moore, Myers, and Co, in trust for their creditors; and therefore, the moment he received such notice, the act of laying the attachment, by a retrospective operation, became unlawful from the beginning. Now, in the first place, it is to be observed, that the orders for laying the attachment, were given about two weeks before the general assignment, though the attachment was in fact laid about three weeks afterwards. Then, if by laying the attachment, the defendant had gained an advantage for his friend Badnell, I cannot perceive upon what principle it became illegal, to preserve that advantage by continuing the attachment. In order to give colour to his argument, the counsel for the defendants assumes, that the attachment was laid by the defendant, thereby confounding the order of the defendant to lay the attachment in the name and foi the use of Badnell, with the attachment itself; as if that had been laid for the defendant’s own use. And this assumption is followed up by a very ingenious argument, that the general assignment 01 Moore, Myers, and Co., being sustained by the law of Pennsylvania, no Pennsylvania creditor will be permitted to secure his own debt, by attaching the property of Moore, Myers, and Co., jn any part of the world out of Pennsylvania. I beg it to be understood, that I do not assent to the proposition, though I do not at present either deny or give any opinion on it, because the question does not properly arise on this record. The attachment was for the use, not of a Pennsylvania creditor,, but of a British subject, who surely had a right to secure himself by attaching the property of his Pennsylvania debtor, in any country, by the law of which his attachment was sustainable. There was nothing, therefore, either improper or illegal, in the defendant’s giving orders to his agent in New Orleans, to prosecute BadnelVs attachment, after he received notice of the general assignment of Moore, Myers, and Co.
Upon the whole, I perceive no error in this record, and am of opinion that the judgment should be affirmed.
Judgment affirmed.